UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| BOYS AND GIRLS CLUBS OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| v. | ) ) | |
| RIGGS, COUNSELMAN, MICHAELS & DOWNES, INC. d/b/a RCM&D, INC., | ) ) ) | |
| Defendant. | ) ) ) | |

## COMPLAINT

Plaintiff Boys & Girls Clubs of America ("BGCA"), by and through its counsel, files this Complaint against Defendant Riggs, Counselman, Michaels & Downes, Inc. d/b/a RCM&D, Inc. ("Defendant"), as follows:

## NATURE OF THE ACTION

1.

This action arises from an agreement between BGCA and Defendant in which Defendant agreed to provide administrative services related to the BGCA Master Plan and Trust, which consists of 401(a) and 401(k) retirement plans (the "Master Plan") sponsored by BGCA on behalf of itself and its member Boys & Girls Clubs adopting retirement plans (the "Member Plans"). Upon termination of

1

that agreement, BGCA transitioned the administrative services at issue to a new plan administrator selected by BGCA. During and after the transfer of services to the new plan administrator, BGCA discovered multiple breaches of the terms of the agreement by Defendant, as well as additional negligent misconduct by Defendant. Defendant also repeatedly breached the material terms of the agreement leading up to and during the transfer of the administration services and engaged in numerous negligent acts and omissions related to the retirement plans of BCGA's member Boys & Girls Clubs (the "Member Clubs").

BGCA incurred hundreds of thousands of dollars in fees, costs and expenses as a direct and proximate result of Defendant's breaches of the terms of the agreement, as well as Defendant's negligent acts and omissions. Despite BGCA's repeated demands, however, Defendant has refused to indemnify or otherwise pay for any of the monetary damages caused to BGCA by Defendant's misconduct. Accordingly, BGCA files this Complaint and asserts claims against Defendant for breach of contract (Count I), promissory estoppel (Count II), unjust enrichment (Count III) and negligence (Count IV).

## PARTIES, JURISDICTION AND VENUE

### 2.

BGCA is a District of Columbia corporation with its principal place of business located at 1275 Peachtree Street, NE, Atlanta, Georgia 30309.

### 3.

Upon information and belief, Defendant is a Maryland corporation with its principal place of business located at 555 Fairmount Avenue, Towson, Maryland 21286.

### 4.

Defendant and BGCA entered into an Administrative Services Agreement, effective July 1, 2014 (the "Agreement").  A true and correct copy of the Agreement is attached as Exhibit 1.

### 5.

In Section 16 of the Agreement, the Parties agreed that the "terms of this Agreement shall be interpreted under the laws of the State of Georgia without regard to the conflict of law provision thereof, and any judicial action to enforce the terms of this Agreement shall be brought in the courts of such state."

6.

This Court has jurisdiction in this action pursuant to the terms of the Agreement and 28 U.S.C. § 1332(a)(1), and venue pursuant to 28 U.S.C. §§ 1391, including because the amounts in dispute among the Parties are more than $75,000 exclusive of interest and costs.

## FACTUAL BACKGROUND

### I.   The Parties and Their Agreement.

7.

Across the United States, BGCA Member Clubs offers innovative, quality programs designed to empower youth to excel in school and lead healthy, productive lives.

8.

From its beginnings in 1860, BGCA Member Clubs have provided mentoring and guidance to hundreds of thousands of children and teens in the United States.  According to data collected by BGCA, 97% of Club teens expect to graduate from high school and 88% expect to complete some kind of post-secondary education.

9.

BGCA is the Sponsor for the Master Plan, which allows Member Clubs to adopt separate Member Plans qualified under Section 401 of the Internal Revenue Code for the benefit of their employees.

10.

At all relevant times, Defendant was engaged in the business of providing administrative services, including those of a third-party administrator, to qualified retirement plans.

11.

Pursuant to the terms of the Agreement, Defendant agreed to provide such administrative services to BGCA for the Master Plan and Member Plans.

12.

In Section 9 of the Agreement, Defendant agreed to indemnify BGCA from "any and all loss and expense which may arise out of or negligent acts or omissions of [Defendant] in the performance of its duties under this Agreement."

13.

From July 1, 2014, through June 30, 2017, Defendant provided administrative services to BGCA for the Master Plan and Member Plans, including pursuant to the terms of the Agreement.

14.

The Agreement terminated on June 30, 2017, in accordance with the term set forth in Section 3(a) of the Agreement.

15.

The Agreement was not renewed after June 30, 2017, by BGCA or otherwise.

16.

Instead, BGCA retained Milliman, Inc. ("Milliman") to provide administrative services to BGCA for the Master Plan and Member Plans.

17.

BGCA began the transition of administrative services for the Master Plan and Member Plans from Defendant to Milliman in December 2016.

18.

BGCA and its Member Clubs timely paid Defendant all of the amounts owed to Defendant under the terms of the Agreement, and BGCA has fulfilled all of its obligations to Defendant under the terms of the Agreement.

II.    **Defendant's Numerous Breaches Of The Terms Of The Agreement
And Its Negligent Administration Of The Member Plans.**

19.

In transferring the administrative services provided by Defendant to
Milliman related to the Master Plan and Member Plans, Defendant was negligent
and repeatedly breached the terms of the Agreement.

20.

During the transfer of the administrative services provided by Defendant,
BGCA also discovered other negligent acts and omissions as well as numerous
breaches of the terms of the Agreement by Defendant.

21.

For example, Defendant expressly agreed in the terms of the Agreement to
prepare and provide BGCA with a signature ready IRS Form 5500 ( "Form 5500")
for each Member Plan in advance of the deadlines of the filing of such Form
5500s, including pursuant to Attachment A: Scope of Service ("Scope of Service")
and Attachment B: Service Standards ("Service Standards") of the Agreement.

22.

A Form 5500 generally is used to report information concerning the qualification of a retirement plan, its financial condition, as well as the investments and operation of the retirement plan, as required under the Internal Revenue Code, § 6058 (the "IRS Code") and the Employment Retirement Income Security Act of 1974 ("ERISA"), §§ 104 and 4065.

23.

Despite its obligations to do so under the terms of the Agreement, Defendant failed to prepare, provide or assist BGCA with signature ready Form 5500s related to each of the Member Plans prior to the filing deadlines for such forms for the Plan Year End December 31, 2016.

24.

Because Defendant failed to timely prepare, provide or assist BGCA with the signature ready Form 5500s related to each of the Member Plans, BGCA was forced to retain Milliman and use its own staff to prepare two hundred sixty-two (262) Form 5500s for Member Clubs for the Plan Year End December 31, 2016.

25.

BGCA incurred fees from Milliman in the amount of at least $96,193 to prepare and provide signature ready Form 5500s related to the Member Plans for the Plan Year End December 31, 2016.

26.

Despite its obligations to do so under the terms of the Agreement, Defendant failed to prepare, provide or assist BGCA with signature ready Form 5500s related to each of the Member Plans prior to the filing deadlines for such forms for the Plan Year End June 30, 2017, or Plan Year End December 31, 2017.

27.

Because Defendant failed to timely prepare, provide or assist BGCA with the signature ready Form 5500s related to each of the Member Plans, BGCA was forced to retain Milliman and use its own staff to prepare all of the Form 5500s for the Plan Year End June 30, 2017, and Plan Year End December 31, 2017.

28.

BGCA incurred fees from Milliman in the amount of at least $88,222.06 to prepare and provide signature ready Form 5500s related to the Member Plan for the Plan Year End June 30, 2017, and Plan Year End December 31, 2017.

29.

BGCA and its Member Clubs also incurred late fees and expended significant staff time preparing signature ready Form 5500s related to the Member Plans for the Plan Year End December 31, 2016, Plan Year End June 30, 2017, and Plan Year End December 31, 2017.

30.

To the extent Defendant prepared and provided Member Clubs with Form 5500s related to the Member Plans under the terms of the Agreement, such Form 5500s sometimes were inaccurate and required BGCA to file corrective Form 5500s for such Member Plans, thereby constituting additional breaches of the terms of the Agreement by Defendant.

31.

In the Service Standards in the Agreement, Defendant expressly agreed to provide and submit completed annual audits of the Member Plans along with Form 5500s, where necessary.

32.

Defendant failed to complete or submit necessary annual audits related to Form 5500s for various Member Plans as required under the terms of the Agreement and applicable law, including for the Plan Year End December 31, 2016, Plan Year End June 30, 2017, and Plan Year End December 31, 2017.

33.

BGCA incurred significant expenses in securing the completion of the necessary annual audits related to Form 5500s for various Member Plans, including for annual audits which Defendant had agreed to ensure were submitted under the terms of the Agreement but failed to do so.

34.

In the terms of the Agreement, including in the Scope of Service and Service Standards, Defendant agreed to process and provide to each adopting Member Club all plan documents, adoption agreements, Board resolutions and summary plan descriptions for its respective Member Plan in a timely manner.

35.

Despite its obligations to do so in the terms of the Agreement, Defendant failed to timely process or provide to each adopting Member Club all plan documents, adoption agreements, Board resolutions and summary plan descriptions for its respective Member Plan.

36.

For example, Defendant failed to timely process or provide at least one hundred and seven (107) adoption agreements and approved Board resolutions for various Member Plans as of the June 2017 transition of administrative services from Defendant to Milliman.

37.

In addition, Defendant failed to timely process or provide three hundred seventy-eight (378) adoption agreements and related Board resolutions for various Member Plans related to the restatement of the Master Plan effective on January 1, 2017.

38.

Defendant also failed to timely process or prepare summary plan descriptions for numerous Member Plans, including in connection with the restatement of the Master Plan effective on January 1, 2017.

39.

In addition to the significant time expended by its own staff, BGCA incurred fees of at least $132,300 from Milliman to process and prepare the three hundred seventy-eight (378) adoption agreements and related Board resolutions for various Member Plans related to the restatement of the Master Plan effective on January 1, 2017.

40.

Defendant agreed in the terms of the Agreement, including in Sections 1 and 3 as well as the Scope of Service and Service Standards, to collect and maintain certain information and records related to Member Plans and participants, including in accordance with industry standards.

41.

Despite its obligations to do so, Defendant failed to maintain complete and accurate information or records related to the Member Plans and participants in accordance with the terms of the Agreement and industry standards.

42.

For example, Defendant failed to maintain complete or accurate employment information (*e.g.*, hire dates, paid hours, eligibility dates, and termination dates) for the majority of participants of the Member Plans as required by the terms of Agreement.

43.

Defendant's ability to properly perform many essential and contractual services for plan participants, including determining a participant's eligibility to receive employer contributions, determining the vesting status of participant accounts, completing distributions from the Member Plans, conducting "force outs" of small balance accounts and administering forfeitures to offset future plan contributions, was dependent on Defendant's collection and maintenance of this critical employment information of participations in the Member Plans.

44.

BGCA incurred fees from third-party vendors, including Milliman, in the amount of at least $90,143.70 to locate, collect and maintain the necessary employment information for participants of the Member Plans which Defendant failed to collect or maintain as the administrator of the Member Plans under the terms of the Agreement.

14

45.

Under the terms of the Agreement, including the Scope of Service and Service Standards, Defendant was obligated to provide BGCA and participants of the Member Plans with certain notices, reports and information related to participant accounts in the Member Plans.

46.

Defendant failed to provide BGCA and participants of the Member Plans with the notices, reports and information required under the terms of the Agreement, including numerous annual vesting notices, enrollment kits, summary annual reports, safe harbor notices, SOX notices, fees and expenses, QDIA, quarterly administrative reports, electronic renewal kits, and contribution and administrative reports, many of which Defendant was required to provide to participants in the Member Plans before the July 1, 2017 Plan Year begin date.

47.

As part of the transition of administrative services from Defendant to Milliman, BGCA incurred fees of at least $17,204.19 to provide participants of the Member Plans with the notices, reports and information that Defendant failed to provide such participants as required under the terms of the Agreement.

48.

Pursuant to the terms of the Agreement, including the Service Standards, Defendant was obligated to fully terminate or deconvert Member Plans upon request and to fully transfer assets for deconverted plans.

49.

Despite its obligations to do so, Defendant failed to fully terminate or deconvert numerous Member Plans or fully transfer assets for converted plans, including through at least the following errors and omissions as of the termination of the Agreement:

- Eight (8) Member Plans improperly had both a 401(a) and 401(k) plan with assets;

- Twelve (12) Member Plans had no assets but had not been formally terminated by Defendant;

- Fifty-four (54) Member Plans were supposed to have been terminated or deconverted by Defendant and all assets distributed already, but had not been;

- Twenty-four (24) Member Plan mergers for which Defendant had failed to ensure the appropriate termination or deconversion of one plan to another;

16

- Eleven (11) organizations had plans but were no longer associated with BGCA and therefore had lost eligibility to participate in the Master Plan; and

- Eight (8) orphaned/abandoned Member Plans, as defined by the IRS, that Defendant had not properly terminated.

50.

BGCA has incurred at least $45,684.50 in fees from Milliman to correct these errors and omissions by Defendant, as well as the expenditure of significant BGCA staff time.

51.

Upon termination of the Agreement, Defendant was obligated to "compile Data belonging to BGCA along with any requested backup files, and deliver it in useable form to BGCA, at BGCA's cost within 90 days." If BCGA requested data in electronic format, which BCGA did, Defendant was obligated to produce such data "in usable electronic format" pursuant to Section 7 of the Agreement.

52.

After termination of the Agreement, Defendant failed to deliver BGCA's information and data as required in Section 7 of the Agreement.

17

53.

BGCA incurred fees and costs in the amount of at least $24,850, not including significant time expended by BGCA's staff, in attempting to retrieve BGCA information and data scattered throughout more than two hundred (200) boxes of documents at Defendant's offices.

54.

In Section 11 of the Agreement, Defendant agreed to "administer and operate the BGCA plan in full compliance with all applicable federal laws and regulations."

55.

Defendant failed to administer or operate the Master Plan or Member Plans in full compliance with all federal laws or regulations.

56.

As part of the transition of administrative services to Milliman, BGCA discovered that Defendant had failed to administer or operate the Master Plan or Member Plans in full compliance with federal laws and regulations, including because Defendant: (1) allowed numerous employees to participate in Member Plans who were ineligible under applicable law and did not ensure the participation of eligible employees in the Member Plans; (2) permitted participants to take loans

from 401(a) plans, which is contrary to applicable law and the Member Plans

themselves; and (3) failed to conduct general nondiscrimination testing of certain

Member Plans in accordance with applicable law.

57.

As set forth in the Service Standards in the Agreement, Defendant was

required to administer and operate a bank account to facilitate the receipt and

distribution of plan contributions, loan payments, rollovers and other funds from

participants in the Master and Member Plans.

58.

Defendant's operation and use of the bank account required in the Service

Standards was negligent, improper, and in violation of the terms of the Agreement

including because Defendant: (1) failed to properly or timely reconcile the bank

account on monthly basis, thereby delaying or preventing participant contributions,

loan payments, rollovers, and other deposits related to the Member Plans; (2) failed

to pay monthly account fees for the bank account as the plan administrator, thereby

causing such fees to be paid from participant funds; (3) failed to reconcile the bank

account prior to the transition of administrative services of the Member Plans to

Milliman, resulting in a failure to transfer or pass through at least $297,665.61 in

participant funds to the Member Plans; and (4) operated and used a separate

19

participant account containing participant funds, which was unauthorized and never disclosed to BGCA.

59.

BGCA incurred additional fees of at least $45,697.30 from Milliman to properly reconcile the bank account at issue following transition of the administrative services from Defendant, which would have been unnecessary had Defendant properly operated such bank account as set forth in the Service Standards in the Agreement in the first instance.

60.

Defendant received payment for all of the fees owed by BGCA and Member Plans under the terms of the Agreement, including for all of the administrative services that Defendant agreed to provide in the terms of the Agreement.

61.

Despite repeated demands by BGCA, Defendant has failed and refused to return or remit any of the fees received by Defendant pursuant to the terms of the Agreement or to indemnify BGCA for any of the losses or expenses of BGCA arising from Defendant's numerous breaches of the terms of the Agreement and Defendant's negligent acts and omissions.

## COUNT I – BREACH OF CONTRACT

62.

BGCA incorporates the allegations in the previous paragraphs of the Complaint as if fully set forth herein.

63.

By failing and refusing to prepare, provide or assist Member Clubs with signature ready Form 5500s for each of the Member Plans for the Plan Year End December 31, 2016, Defendant breached the material terms of the Agreement, including the Scope of Services and Service Standards in the Agreement.

64.

By failing and refusing to prepare, provide or assist Member Clubs with signature ready Form 5500s for each of the Member Plans for the Plan Year End December 31, 2016, Defendant has breached the implied covenant of good faith and fair dealing found in the terms of the Agreement.

65.

By failing and refusing to prepare, provide or assist Member Clubs with signature ready Form 5500s for each of the Member Plans for the Plan Year End June 30, 2017 and December 31, 2017, Defendant breached the material terms of the Agreement, including the Scope of Services and Service Standards in the Agreement.

66.

By failing and refusing to prepare, provide or assist Member Clubs with signature ready Form 5500s for each of the Member Plans for the Plan Year End June 30, 2017 and December 31, 2017, Defendant has breached the implied covenant of good faith and fair dealing found in the terms of the Agreement.

67.

By failing and refusing to provide accurate Form 5500s for each of the Member Plans, Defendant breached the material terms of the Agreement, including the Scope of Services and Service Standards in the Agreement.

68.

By failing and refusing to provide accurate Form 5500s for each of the Member Plans, Defendant has breached the implied covenant of good faith and fair dealing found in the terms of the Agreement.

69.

By failing to secure and submit completed annual audits along with accurate Form 5500s for each of the Member Plans, Defendant breached the material terms of the Agreement, including the Service Standards in the Agreement.

70.

By failing to secure and submit completed annual audits along with accurate Form 5500s for each of the Member Plans, Defendant has breached the implied covenant of good faith and fair dealing found in the terms of the Agreement.

71.

By failing to maintain complete and accurate information or records related to Member Plans and participants, Defendant breached the material terms of the Agreement, including Sections 1 and 3, as well as the Scope of Services and Service Standards in the Agreement.

72.

By failing to maintain complete and accurate information or records related to Member Plans and participants, Defendant has breached the implied covenant of good faith and fair dealing found in the terms of the Agreement.

73.

By failing to provide participants of the Member Plans with the notices, reports, and information required under the terms of the Agreement, Defendant breached the material terms of the Agreement, including the Scope of Services and Service Standards in the Agreement.

74.

By failing to provide participants of the Member Plans with the notices, reports, and information required under the terms of the Agreement, Defendant has breached the implied covenant of good faith and fair dealing found in the terms of the Agreement.

75.

By failing to fully terminate or deconvert Member Plans upon request and to fully transfer assets for converted plans, Defendant breached the material terms of the Agreement, including the Scope of Services and Service Standards in the Agreement.

76.

By failing to fully terminate or deconvert Member Plans upon request and to fully transfer assets for converted plans, Defendant has breached the implied covenant of good faith and fair dealing found in the terms of the Agreement.

77.

By failing to accurately maintain and deliver plan information and data to BCGA upon termination of the Agreement, Defendant breached the material terms of the Agreement, including Section 7 of the Agreement.

78.

By failing to accurately maintain and deliver plan information and data to BGCA upon termination of the Agreement, Defendant has breached the implied covenant of good faith and fair dealing found in the terms of the Agreement.

79.

By failing to administer and operate the Master Plan or Member Plans in full compliance with all federal laws and regulations, Defendant breached the material terms of the Agreement, including Section 11 of the Agreement.

80.

By failing to administer and operate the Master Plan or Member Plans in full compliance with all federal laws and regulations, Defendant has breached the implied covenant of good faith and fair dealing found in the terms of the Agreement.

81.

By failing to properly operate and use the bank account for participant funds related to the Member Plans, Defendant breached the material terms of the Agreement, including the Service Standards in the Agreement.

82.

By failing to properly operate and use the bank account for participant funds related to the Member Plans, Defendant has breached the implied covenant of good faith and fair dealing found in the terms of the Agreement.

83.

By failing and refusing to indemnify BGCA for any of the losses or expenses of BGCA arising out of Defendant's numerous breaches of the material terms of the Agreement and Defendant's negligent acts and omissions, Defendant breached the material terms of the Agreement, including Section 9 of the Agreement.

84.

By failing and refusing to indemnify BGCA for any of the losses or expenses of BGCA arising out of Defendant's numerous breaches of the material terms of the Agreement and Defendant's negligent acts and omissions, Defendant has breached the implied covenant of good faith and fair dealing found in the terms of the Agreement.

85.

As a result of the breaches by Defendant of the material terms of the Agreement and of the implied covenant of good faith and fair dealing found in the terms of the Agreement, BGCA has suffered monetary damages, including compensatory and actual damages, in an amount to be proven at trial, but in excess of $75,000 exclusive of interest and costs.

86.

Through its misconduct, Defendant has acted in bad faith, been stubbornly litigious and caused BGCA unnecessary trouble and expense.

87.

As a result of Defendant's misconduct, BGCA is entitled to an award of its reasonable attorneys' fees and costs incurred in this matter pursuant to O.C.G.A. § 13-6-11.

## COUNT II – PROMISSORY ESTOPPEL

88.

BGCA incorporates the allegations in the previous paragraphs of the Complaint as if fully set forth herein.

89.

Defendant promised BGCA that Defendant would prepare, provide or assist BGCA and Member Clubs with signature ready Form 5500s for each of the Member Plans for the Plan Year End December 31, 2016.

90.

Defendant promised BGCA that Defendant would prepare, provide or assist BGCA and Member Clubs with signature ready Form 5500s for each of the Member Plans for the Plan Year End June 30, 2017 and December 31, 2017.

91.

Defendant promised BGCA that Defendant would provide accurate Form 5500s for each of the Member Plans.

92.

Defendant promised BGCA that Defendant would ensure the submission of completed annual audits along with accurate Form 5500s for each of the Member Plans.

93.

Defendant promised BGCA that Defendant would maintain complete and accurate information or records related to Member Plans and participants.

94.

Defendant promised BGCA that Defendant would provide participants of the Member Plans with the notices, reports, and information required under the terms of the Agreement.

95.

Defendant promised BGCA that Defendant would fully terminate or deconvert Member Plans upon request and fully transfer assets for deconverted plans.

96.

Defendant promised BGCA that Defendant would deliver BGCA's information and data upon termination of the Agreement.

97.

Defendant promised BGCA that Defendant would administer and operate the Master Plan or Member Plans in full compliance with all federal laws and regulations.

98.

Defendant promised BGCA that Defendant would properly operate and use the bank account for participant funds related to the Member Plans.

99.

Defendant promised BGCA that Defendant would indemnify BGCA for any of the losses or expenses of BGCA arising out of Defendant's numerous breaches of the material terms of the Agreement or Defendant's negligent acts and omissions.

100.

Defendant should have reasonably expected BGCA to rely on each of these promises made by Defendant.

101.

BGCA reasonably and justifiably relied to its detriment on each of the promises made by Defendant.

102.

Injustice can only be avoided by the enforcement of each of the promises made by Defendant, including without limitation the return of all fees paid to Defendant by BGCA related to such promises and the indemnification of all of BGCA's losses and expenses related to such promises, in an amount to be proven at trial but in excess of $75,000 exclusive of interest and costs.

## COUNT III - UNJUST ENRICHMENT

103.

BGCA incorporates the allegations in the previous paragraphs of the Complaint as if fully set forth herein.

104.

BGCA has conferred valuable benefits on Defendant, including through the payment of fees to Defendant by BGCA related to certain administrative services to be provided by Defendant related to the Master Plan and Member Plans.

105.

Although Defendant accepted the benefits conferred upon it by BGCA, including the fees paid to Defendant by BGCA, Defendant has failed and refused to adequately compensate BGCA for the value of such benefits, including by failing to provide certain administrative services related to the Master Plan and Member Plans.

106.

As a result of the failure and refusal by Defendant to adequately compensate BGCA for the value of the benefits conferred, Defendant has been unjustly enriched.

107.

To avoid injustice and remedy the unjust enrichment by Defendant, BGCA should be awarded the value of the benefits it conferred upon Defendant, including the payment of all fees paid to Defendant by BGCA related to administrative services that Defendant failed to provide for the Master Plan and Member Plans, in an amount to be proven at trial but in excess of $75,000 exclusive of interest and costs.

## COUNT IV - NEGLIGENCE

### 108.

BGCA incorporates the allegations in the previous paragraphs of the Complaint as if fully set forth herein.

### 109.

Defendant owed BGCA a duty of ordinary care in providing administrative services to BGCA related to the Master Plan and Member Plans.

### 110.

By negligently failing to prepare, provide or assist BGCA and Member Clubs with signature ready Form 5500s for each of the Member Plans for the Plan Year End June 30, 2017 and December 31, 2017, Defendant violated the duty of ordinary care owed to BCGA.

### 111.

By negligently failing to provide accurate Form 5500s for each of the Member Plans, Defendant violated the duty of ordinary care owed to BCGA.

112.

By negligently failing to ensure submission of completed annual audits along with accurate Form 5500s for each of the Member Plans, Defendant violated the duty of ordinary care owed to BCGA.

113.

By negligently failing to maintain complete and accurate information or records related to Member Plans and participants, Defendant violated the duty of ordinary care owed to BCGA.

114.

By negligently failing to provide participants of the Member Plans with the notices, reports, and information required under the terms of the Agreement, Defendant violated the duty of ordinary care owed to BCGA.

115.

By negligently failing to fully terminate or deconvert Member Plans upon request and to fully transfer assets for deconverted plans, Defendant violated the duty of ordinary care owed to BCGA.

116.

By negligently failing to deliver BGCA's information and data upon termination of the Agreement, Defendant violated the duty of ordinary care owed to BCGA.

117.

By negligently failing to administer and operate the Master Plan or Member Plans in full compliance with all federal laws and regulations, Defendant violated the duty of ordinary care owed to BCGA.

118.

By negligently failing to properly operate and use the bank account for participant funds related to the Member Plans, Defendant violated the duty of ordinary care owed to BCGA.

119.

Defendant's negligent acts and omissions have proximately caused damage and loss to BGCA and entitle BGCA to an award of monetary damages, including compensatory and actual damages, in an amount to be proven at trial but in excess of $75,000 exclusive of interest and costs.

120.

Defendant's actions as described herein show willful misconduct, malice, fraud, wantonness, oppression, and an entire want of care raising the presumption of conscious indifference to consequences, and entitle BGCA to an award of punitive damages pursuant to O.C.G.A. § 51-12-5.1.

## **PRAYER FOR RELIEF**

WHEREFORE, BGCA prays for the following relief:

a.  Judgment in BGCA's favor on all claims asserted against Defendant;

b.  Compensatory and actual damages arising from the breaches of contract and breaches of the implied covenant of good faith and fair dealing by Defendant related to the Agreement;

c.  An award against Defendant of the reasonable attorneys' fees and costs incurred by BGCA in this matter pursuant to O.C.G.A. § 13-6-11;

d.  An order enforcing the promises made by Defendant to BGCA, including the return of all fees paid to Defendant by BGCA related to such promises and the indemnification of all of BGCA's losses and expenses related to such promises;

e.  An award of the value of the benefits conferred upon Defendant by BGCA in an amount to be determined at trial pursuant to BGCA's unjust enrichment claims against Defendant;

f.  An award of monetary damages, including compensatory and actual damages, in an amount to be proven at trial pursuant to BGCA's negligence claims against Defendant;

g.  An award of punitive damages against Defendant pursuant to O.C.G.A. § 51-12-5.1;

h.  An award of pre-judgment interest against Defendant pursuant to O.C.G.A. § 7-4-16; and

i.  Such other relief to BGCA as the Court deems just and proper.

Respectfully submitted this 8th day of April, 2021.

FISHERBROYLES, LLP

 /s/ Vincent Bushnell
VINCENT BUSHNELL
Georgia Bar No. 098999
vincent.bushnell@fisherbroyles.com
945 East Paces Ferry Rd. NE
Suite 2000
Atlanta, Georgia 30326
Tel: 678-902-7190
*Attorneys for Plaintiff Boys & Girls Club of America*